# Illinois Official Reports

## Appellate Court

***Dennis v. Pace Suburban Bus Service*, 2014 IL App (1st) 132397**

| | |
|---|---|
| Appellate Court Caption | JANICE DENNIS, Plaintiff-Appellant, v. PACE SUBURBAN BUS SERVICE, Defendant-Appellee (Jeffrey Moore, Defendant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2397 |
| Filed | September 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an incident in which defendant bus driver took plaintiff, an intoxicated passenger on his bus, to his residence after his shift ended and allegedly sexually assaulted her, the trial court erred in dismissing the counts of plaintiff's complaint against defendant bus company alleging battery based on sexual assault and false imprisonment, both under a theory of *respondeat superior* and on the bus company's status as a common carrier, but the count against the bus company alleging negligent supervision was properly dismissed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-3868; the Hon. Kathy Flanagan, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |

Counsel on
Appeal

Jeffrey S. Deutschman, of Deutschman & Associates, P.C., of Chicago, for appellant.

Jeffrey G. Chrones, Garrett L. Boehm, Jr., and James V. Tomaska, all of Johnson & Bell, Ltd., of Chicago, for appellee.

Panel

PRESIDING JUSTICE PALMER delivered the judgment of the court, with opinion.
Justices Gordon and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff brought this action to recover damages for injuries she sustained when she was allegedly sexually assaulted by defendant Jeffrey Moore (Moore), a bus driver employed by Pace. Plaintiff asserted claims against Moore and Pace. Pace filed a motion to dismiss counts I through III, all of which were directed solely at Pace. The circuit court granted Pace's motion and dismissed those counts with prejudice.

¶ 2    In her third amended complaint, plaintiff first asserted a claim for "battery (sexual assault)" against Pace under a theory of *respondeat superior* and alleged the following facts. On May 9, 2011, Moore was operating a Pace bus on a route from the Chicago Heights terminal to Harvey, Illinois. On that same date, plaintiff boarded Pace's bus, operated by Moore, to be transported from her doctor's office to her home. During this trip, plaintiff was clearly intoxicated and was from time to time passed out on the bus and could be seen by any reasonable person to be in need of assistance to get off the bus at her regular stop. Pace, by its employee Moore, knew that plaintiff was intoxicated and unable to care for herself in alighting from the bus at her proper stop. Plaintiff continued to ride the bus in a passed-out condition through several "passes past her stop" and until Moore's shift had ended. Moore did not call for medical attention or law enforcement intervention for a passenger he knew was intoxicated, falling in and out of consciousness and unable to get off the bus at her regular stop. Moore did not radio the bus dispatcher for assistance when it was clear that plaintiff was intoxicated and confused. Pace, by its bus driver Moore, failed to take plaintiff to a place of safety when it was clear that she was intoxicated and confused. Instead, after his shift ended, Moore took plaintiff to his home, where he sexually assaulted her while she was in an intoxicated condition and unable to consent. Plaintiff awoke in Moore's bed the following morning and became nervous and angry as to how she ended up naked in the bed of a man whom she did not know. All of Moore's actions were taken during his duties as a bus driver and were taken in conscious disregard for plaintiff's safety. Pace, as a common carrier, owed a high duty of care to passengers in the act of boarding, upon or in the act of alighting from the bus. Pace entrusted these duties to Moore, who was acting as a bus driver in the scope of his employment, and as such Pace was responsible for Moore's actions on the bus under the doctrine of *respondeat superior*. As a proximate result of the above acts and omissions, plaintiff sustained severe physical and emotional injuries and asked the court to award her a sum in excess of $50,000.

¶ 3    In count II, plaintiff asserted a claim of negligent supervision against Pace. Plaintiff alleged that Pace owed a high duty of care to control its bus driver Moore while he was acting in the

- 2 -

scope of his employment in removing plaintiff from the bus with the intention of taking her to his home to sexually assault her. Pace owed plaintiff a duty to carry its passengers safely and properly and it entrusted that duty to Moore. As such, Pace was responsible under the doctrine of *respondeat superior*. Plaintiff further alleged that Pace knew or had reason to know that it had the ability to control Moore and knew or should have known of the necessity and opportunity for exercising such control by preventing its drivers from taking home passengers who were under the influence of drugs or alcohol. It is common for impaired persons to ride Pace buses, and Pace knew of the need to train its drivers on how to properly handle impaired patrons. In addition, Pace knew or should have known of the need to monitor its buses with cameras and other security devices to ensure that drivers did not take advantage of impaired passengers. On information and belief, Pace failed to employ cameras or other security devices on the bus in question, failed to employ policies or procedures which would dictate how drivers handled incapacitated passengers and failed to perform a background check, which would have identified Moore's "deviant tendencies" before the incident occurred. By failing to undertake the above duties, Pace was negligent in hiring, retaining and supervising Moore. As a proximate result of one or more of the above negligent acts or omissions, plaintiff was sexually assaulted and suffered permanent injuries and asked for an amount in excess of $50,000.

¶ 4        In count III, plaintiff asserted a claim of false imprisonment against Pace under the doctrine of *respondeat superior*. Plaintiff realleged the facts in count I and further alleged that she was unable to get off the bus at her intended stop due to her intoxication. Pace, through Moore, was aware that plaintiff intended to get off the bus but lacked the ability to do so on her own. Pace had responsibility to remove a passenger or otherwise assist her in disembarking the bus when it knew she lacked the ability to do so on her own. When plaintiff was "carried along superfluous circuits of the bus route and taken off route to the bus storage area," Pace, through Moore, compelled plaintiff to go where she did not wish to go and to remain where she did not wish to remain. All of Moore's activities in this regard were done during his duties as a bus driver. Pace, as a common carrier, owed a duty of high care to passengers such as plaintiff and it entrusted that duty to Moore. Pace's actions, in compelling an impaired person to remain on the bus against her will and taking her to places she did not wish to go, created the opportunity and occasion for her to be victimized and the sexual assault was the proximate result of the above-described actions.

¶ 5        Plaintiff's complaint also asserted claims against Moore for battery (count IV) and a claim under the gender violence act (count V). Those counts are not at issue in this appeal.

¶ 6        Pace filed a motion to dismiss the complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2012)). Pace argued that count I failed to state a cause of action for battery because Moore was not acting within the scope of his employment when the alleged sexual assault occurred. Pace argued that count II failed to state a cause of action for negligent supervision because Pace had no duty to supervise acts of its employee while he was off duty and at his home and because count II was factually insufficient. Pace argued that count III failed to state a cause of action for false imprisonment because Moore was not acting within the scope of his employment when the alleged false imprisonment occurred and because the allegations in the complaint were factually insufficient.

¶ 7        The circuit court granted Pace's motion and dismissed counts I through III of the complaint with prejudice. Regarding count I, the court noted that it was essentially identical to count I in the prior version of plaintiff's complaint with only several new allegations. The court, while acknowledging that a common carrier can be liable for an employee's sexual assault on a passenger, held that common carrier liability did not apply in this case because the duty of a common carrier to exercise the highest degree of care is only owed to passengers who are in the act of boarding, are upon, or in the act of alighting from the carrier's vehicle. The court found that Pace did not owe the highest duty of care to plaintiff when she was in Moore's home, where the assault took place. The court noted plaintiff's allegations that Moore did not call for assistance or medical aid but found that this did not change the fact that the injury is a sexual assault that occurred at Moore's home when he was no longer on duty. The court also found that there was no causal nexus between the acts and omissions that occurred on the bus and the later sexual assault. The court stated that it previously had noted that it was insufficient to simply allege that all of Moore's acts on the bus were done for the purpose of a later assault. The court further found that at the time of the assault, plaintiff was no longer on the bus and Moore was no longer acting within the scope of his employment as it was not the kind of conduct he was employed to perform, did not occur within the authorized time and space limits and was not motivated by any purpose to serve the master. Thus, count I failed to state a cause of action.

¶ 8        With respect to count II, the court noted that the prior versions of this count contained conclusory allegations and that plaintiff had simply "added a few more conclusory allegations" to the third amended complaint. The court found that those allegations lacked the specific, relevant facts necessary to state a cause of action. Further, the sexual assault occurred at the driver's home after his work day had ended, and Pace owed no duty to supervise him at that time. Regarding the negligent hiring, the court noted that there were again no facts pled which alleged that Pace knew or should have known that Moore had a particular unfitness for his job which created a danger to third persons and that the particular unfitness was the cause of plaintiff's injury.

¶ 9        The court then found that count III remained factually insufficient in its attempt to show that plaintiff was prevented from leaving the bus or was forced to remain on the bus. Further, count III failed to allege a factual nexus between a false imprisonment on the bus and the later sexual assault. Thus, although plaintiff suggested that she was kidnapped, the alleged acts on the bus were separate and apart from the later assault and thus count III suffered from the same deficiency as count I. The court also stated it had noted when ruling on the prior pleadings that it did not appear that plaintiff would be able to state causes of action for battery or false imprisonment and the next deficient pleading must be dismissed with prejudice. Accordingly, the court dismissed with prejudice all counts of the third amended complaint directed at Pace. The court also found that there was no just reason to delay the enforcement or appeal of its order. This appeal followed.

¶ 10        "A motion to dismiss pursuant to section 2-615 attacks the legal sufficiency of the complaint. [Citation.] A court reviewing an order granting a section 2-615 motion takes all well-pled facts as true. [Citation.] On review of a section 2-615 dismissal, the court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted. [Citation.]" *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh*,

398 Ill. App. 3d 710, 714 (2010). Although a court must liberally construe pleadings, it cannot deny a motion to dismiss when only conclusions are alleged. *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 943 (1995). We review a circuit court's dismissal of a complaint pursuant to section 2-615 *de novo*. *Id*.

¶ 11    Plaintiff first argues that count I stated a cause of action for battery. Plaintiff claims that the precise location of the assault is not a factor under relevant case law or the facts of this case. Plaintiff asserts that Moore initiated the sexual assault on the bus, when the relationship of common carrier/passenger existed, by failing to seek aid for plaintiff when he knew she was intoxicated and unable to get off the bus without assistance and then removing her from the bus and taking her to his home, where he sexually assaulted her. Pace responds that count I was properly dismissed because the injury-causing conduct was committed outside the scope of Moore's employment as it occurred at his home while he was off duty.

¶ 12    Under the theory of *respondeat superior*, "an employer can be liable for the torts of his employee when those torts are committed within the scope of the employment." *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009). Under *respondeat superior*, an employer's vicarious liability extends to the negligent, willful, malicious or even criminal acts of its employees, when those acts are committed within the scope of employment. *Id*. "In the context of *respondeat superior* liability, the term 'scope of employment' excludes conduct by an employee that is solely for the benefit of the employee." *Deloney v. Board of Education of Thornton Township*, 281 Ill. App. 3d 775, 784 (1996). "[G]enerally, acts of sexual assault are outside the scope of employment." *Id*. at 783.

¶ 13    Plaintiff relies upon two cases in claiming that Pace can be liable for plaintiff's injuries notwithstanding the principle that intentional torts are generally outside the scope of employment. In *Chicago & Eastern R.R. Co. v. Flexman*, 103 Ill. 546 (1882), the plaintiff brought an action to recover damages for personal injuries inflicted upon him while he was a passenger on the defendant's train, by a brakeman employed by the defendant. The plaintiff was riding on the defendant's train when he realized that he had lost his watch. A passenger on the train asked the plaintiff who he thought stole the watch, and the plaintiff pointed at the brakeman and accused him. The brakeman immediately struck the plaintiff's face with a lantern, inflicting injuries on the plaintiff. *Id* at 548-49.

¶ 14    Our supreme court considered whether the above facts constituted a cause of action against the defendant. The court noted the general principle that employers are generally not liable for the torts of their employees committed outside the scope of employment and that this principle would be applicable if the employee had injured a stranger who had no relationship to the railroad company. *Id*. at 549-50. However, the court noted that a different situation was presented when the employee injures a passenger on one of the railroad company's trains. *Id*. The court then considered the duties of a common carrier toward its passengers:

> "The appellant was a common carrier of passengers. As such it was not an insurer against any possible injury that a passenger might receive while on the train, but the company was bound to furnish a safe track, cars and machinery of the most approved quality, and place the trains in the hands of skillful engineers and competent managers,–the agents and servants were bound to be qualified and competent for their several employments. Again, the law required appellant, as a common carrier, to use all reasonable exertion to protect its passengers from insult or injury from fellow passengers who might be on the train, and if the agents of appellant in charge of the

- 5 -

train should fail to use reasonable diligence to protect its passengers from injuries from strangers while on board the train, the company would be liable. So, too, the contract which existed between appellant as a common carrier and appellee as a passenger, was a guaranty on behalf of the carrier that appellee should be protected against personal injury from the agents or servants of appellant in charge of the train. The company placed these men in charge of the train. It alone had the power of removal, and justice demands that it should be held responsible for their wrongful acts towards passengers while in charge of the train. Any other rule might place the traveling public at the mercy of any reckless employe[e] a railroad company might see fit to employ, and we are not inclined to establish a precedent which will impair the personal security of a passenger." *Id*. at 551-52.

The court then held that the evidence showed a legal cause of action against the defendant. *Id*. at 552.

¶ 15    The holding in *Flexman* was relied upon in the other decision cited by plaintiff, *Green v. Carlinville Community Unit School District No. 1*, 381 Ill. App. 3d 207 (2008). In *Green*, the plaintiff attended kindergarten and rode the defendant's school bus to and from school. At some point, the plaintiff told her mother that the bus driver had sexually molested her. The driver was found guilty of child abuse and sentenced to jail. *Id*. at 209. In a subsequent lawsuit against the school district, summary judgment was granted on the plaintiff's vicarious liability claims against the district for intentional infliction of emotional distress and assault and battery. *Id*. The appellate court reversed. The court recognized the general principles that employers are not liable for the acts of their employees if those acts are not committed within the scope of his or her employment and that acts of sexual violence are outside the scope of employment. *Id*. at 212. The court relied upon the exception to his rule announced in *Flexman* and found that the defendant could be liable for the injuries to the plaintiff caused by its employee:

"Exceptions to this general rule do exist, and one such exception involves common-carrier liability. Our supreme court has long held that if an employee of a common carrier intentionally injures a passenger, the common carrier is liable for the passenger's injuries, even if the employee's actions were not in his actual or apparent scope of authority. *Chicago & Eastern R.R. Co. v. Flexman*, 103 Ill. 546, 552 (1882). Thus, a common carrier can be liable for the intentional acts of its employees even if the intentional act is outside the employee's scope of employment and does not benefit the employer. Under this long-standing Supreme Court of Illinois precedent, a common carrier could be liable for the sexual assault of one of its passengers by one of its employees." *Id*. at 212-13.

¶ 16    Under the holdings in these cases, as a common carrier, Pace could be liable for the intentional acts of its employees, even if those acts are committed outside the scope of employment. Therefore, Pace could be found liable for the intentional torts that Moore allegedly committed against plaintiff.

¶ 17    Pace advances several arguments as to why the holdings in *Flexman* and *Green* are inapplicable to the present case. We find each argument unpersuasive. First, Pace argues that common-carrier liability does not apply to the facts of this case because the sexual assault did not occur while plaintiff was a passenger on the bus but, rather, at Moore's home. Pace's interpretation of the word "passenger" is overly narrow. Pace essentially argues that the

intential tort, battery, was committed at Moore's home and therefore plaintiff was not a passenger at the time the tort was committed. However, Moore initiated the sexual assault when plaintiff was riding on the bus at a time when she was a passenger and the common carrier and passenger relationship existed. Plaintiff alleged that she was intoxicated and unable to exit the bus and that Moore, instead of calling for assistance or helping plaintiff, drove plaintiff past her stop and continued to drive her on several more "complete bus trips" until Moore's shift ended. Plaintiff further alleged that Moore performed these acts and that, instead of obtaining assistance for plaintiff, took her to a location where she was more likely to be victimized. Although the final act of sexual assault may have occurred at Moore's home, plaintiff's allegations of Moore's actions on the bus constituted what is essentially a string of events that a jury could find proximately caused plaintiff's injuries. We find that the above allegations stated a cause of action for battery (sexual assault).

¶ 18        Pace also relies on a number of cases holding that a sexual assault was not within the scope of employment. See, *e.g.*, *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 964 (1988) (sexual assault of child by employee of daycare center that occurred at the daycare was not within the scope of employment because employee was acting solely for her own benefit, not the benefit of the daycare center). These decisions, while correctly stating the law, are inapplicable to this case because Pace's potential for common carrier liability for the intentional acts of its employees exists regardless of whether those acts are committed within the scope of employment. See *Flexman*, 103 Ill. at 552; *Green*, 381 Ill. App. 3d at 212.

¶ 19        Finally, Pace argues that *respondeat superior* liability does not apply to this case because the duty of a common carrier to exercise the highest degree of care is owed only to passengers who are in the act of boarding, are upon or are in the act of alighting from the carrier's vehicle. See, *e.g.*, *Katamay v. Chicago Transit Authority*, 53 Ill. 2d 27, 29 (1972) ("The passenger to whom the carrier owes the duty to exercise the highest degree of care is one who is in the act of boarding, is upon, or is in the act of alighting from, the carrier's vehicle."). Therefore, Pace claims, it did not owe plaintiff the highest duty of care when she was in Moore's home, where the sexual assault occurred. However, the highest duty of care standard, and whether that duty was breached, is inapplicable to count I of plaintiff's complaint. That count, and Pace's potential liability, is not based upon a negligence theory. Instead, Pace's potential liability for the intentional acts of its employee is based upon *respondeat superior* and Pace's status as a common carrier. For this and all the reasons stated above, we find that count I of plaintiff's complaint stated a cause of action for battery and was therefore improperly dismissed.

¶ 20        We next consider the dismissal of count III of plaintiff's complaint, which asserted a claim against Pace for false imprisonment. This count is based upon the same theory and case law as count I of the complaint. This count was dismissed for the same reason as count I, that the injury (the sexual assault) did not take place on the bus and therefore Pace could not be liable for Moore's intentional acts. We have already set forth the relevant law on this issue above and concluded that, under *Flexman* and *Green*, Pace could be found liable for Moore's intentional acts that injured plaintiff and we need not repeat that holding here except to reiterate that legally, Pace could be found liable for Moore's intentional tort upon plaintiff.

¶ 21        As with count I, we find that count III of plaintiff's complaint stated a cause of action against Pace for false imprisonment based upon *respondeat superior*. The elements of a cause of action for false imprisonment are:

            "(1) An actor is subject to liability to another for false imprisonment if

- 7 -

(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and

(b) his act directly or indirectly results in such a confinement of the other, and

(c) the other is conscious of the confinement or is harmed by it." Restatement (Second) of Torts § 35 (1965).

In this case, plaintiff's claim of false imprisonment is intertwined with her claim of battery and for the same reasons stated above, Pace is not relieved of liability simply because the harm suffered, the actual sexual assault, took place at Moore's home. In count III, plaintiff alleged that she boarded the bus intending to go home but was in an intoxicated and helpless condition and was unable to get off the bus. Plaintiff also alleged that Moore knew of plaintiff's intended destination and bus stop and that her condition prevented her from getting off the bus. Instead of calling for assistance, Moore "carried [plaintiff] along superfluous circuits of the bus route" and took plaintiff "off route to the bus storage area." In doing so, plaintiff was compelled to remain where she did not wish to remain. Moore then removed plaintiff, who was still in a helpless condition, from the bus and transported her to his home to sexually assault her. These allegations were sufficient to state a claim against Pace for false imprisonment under the doctrine of *respondeat superior*.

¶ 22 Pace argues that there was no allegation that plaintiff was prevented from getting off the bus. However, we believe that plaintiff's allegations that she was unable to get off the bus because of her condition, that Moore knew this and that instead of assisting plaintiff he drove her along "superfluous" routes and past her intended stop were sufficient at this stage of proceedings to infer that plaintiff was confined to the bus and later to Moore's apartment against her will. Plaintiff also specifically alleged that Pace's actions "compelled an impaired person to remain on the bus against her will" and that Pace took plaintiff "to places she did not desire to go." These allegations were sufficiently specific to infer that plaintiff did not consent to remain on the bus and that, through Pace's actions, plaintiff was unable to get off of the bus.

¶ 23 Plaintiff next contends that count II of her complaint stated a cause of action against Pace for negligent supervision. We disagree.

¶ 24 To succeed in an action for negligent supervision, a plaintiff must plead and prove that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular fitness proximately caused the plaintiff's injury. With respect to negligent supervision, Illinois has adopted section 317 of the Second Restatement of Torts. See *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 229 (2000). Section 317 provides in relevant part:

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 317 (1965).

¶ 25 We find that plaintiff's negligent supervision count was properly dismissed. Plaintiff has pleaded no facts that Pace knew or should have known that Moore was unfit to be a Pace bus driver so as to create a risk of harm to third persons. Specifically, plaintiff alleged no facts that Pace had any reason to know or even suspect that Moore would somehow entice a passenger off of the bus after his shift had ended, take her to his home and sexually assault her. In her third amended complaint, plaintiff only offered conclusory allegations in support of her claim. For example, plaintiff alleged that Pace knew or should have known of the necessity and opportunity for exercising control over its drivers to prevent such drivers from taking home passengers who were under the influence of drugs or alcohol and that a background check would have revealed Moore's "sexual proclivities." These types of allegations are entirely conclusory and, as such, they are insufficient to survive a 2-615 motion to dismiss. See *Winfrey*, 274 Ill. App. 3d at 943; *Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 395 Ill. App. 3d 629, 633 (2009) ("a complaint will not survive a motion to dismiss if the complaint consists of only conclusions of law and conclusory factual allegations unsupported by specific factual statements").

¶ 26 Plaintiff has also not alleged facts establishing that Pace's negligence was the proximate cause of plaintiff's injuries. For example, plaintiff alleged no facts as to how Pace's failure to employ procedures dictating how its drivers handled incapacitated passengers proximately caused Moore to sexually assault plaintiff. Put another way, plaintiff alleged no facts indicating how instructing its drivers how to handle incapacitated drivers would have prevented Moore from taking plaintiff to his apartment and sexually assaulting her. Instead of factual allegations, plaintiff offered only the legal conclusion that "as a direct and proximate result of the aforesaid willful and wanton acts or omissions" by [Pace], plaintiff "was sexually assaulted." Again, plaintiff's legal conclusion is insufficient to withstand a section 2-615 motion to dismiss.

¶ 27 Plaintiff claims that she should be subject to a lesser fact-pleading requirement because some of the information needed to plead those facts is exclusively within Pace's knowledge and control. However, plaintiff does not even allege what information she is unable to obtain and that is within Pace's control. Moreover, even if that was true, we still believe plaintiff's allegations are too conclusory to defeat a motion to dismiss. Finally, even if plaintiff was held to a lesser fact-pleading requirement regarding what Pace knew, this would not alter our conclusion regarding plaintiff's failure to plead facts establishing how Pace's acts and omissions proximately caused plaintiff's injuries. For all these reasons, we find that count II of plaintiff's complaint was properly dismissed with prejudice.

¶ 28 For the reasons stated, we affirm the dismissal with prejudice of count II (negligent supervision) of plaintiff's complaint and we reverse the dismissal with prejudice of counts I (battery) and III (false imprisonment) of plaintiff's complaint.

¶ 29 Affirmed in part and reversed in part.