2026 IL App (1st) 251028

Opinion filed: March 18, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-25-1028

| | | |
|---|---|---|
| JANE DOE J.P., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 2024 L 011300 |
| TK BEHAVIORAL, LLC, d/b/a | ) | |
| Timberline Knolls Residential | ) | |
| Treatment Center, and ACADIA | ) | |
| HEALTHCARE COMPANY, INC., | ) | Honorable |
| | ) | Michael F. Otto |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Martin and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Jane Doe J.P., filed an eight-count complaint against defendants TK Behavioral, LLC, d/b/a Timberline Knolls Residential Treatment Center (Timberline) and Acadia Healthcare Company, Inc. (Acadia), alleging that she was sexually abused and assaulted multiple times by one of defendants' employees, Erick Hampton, while she was a patient at their treatment center. Counts VII and VIII alleged that defendants violated section 11 of the Gender Violence Act (Act) (740 ILCS 82/11 (West 2024)) by failing to properly train, monitor, or supervise Hampton or warn their patients of the risk posed by him, failing to take any action against Hampton after plaintiff reported his first instance of sexual abuse and allowing him to be repeatedly left alone with her, and failing to implement and enforce policies to prevent the sexual abuse and assault of their patients. The circuit court dismissed counts VII and VIII with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)) and entered a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for

delaying appeal. Plaintiff appeals. We reverse the dismissal of counts VII and VIII and remand for further proceedings.

¶ 2    The Act became effective on January 1, 2004, and provided that a person who has been subjected to gender-related violence may bring a civil action for damages or injunctive relief against the persons who perpetrated that violence. 740 ILCS 82/10 (West 2024). The Act defines "gender-related violence" as "(1) One or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction"; "(2) A physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois, whether or not the act or acts resulted in criminal charges, prosecution, or conviction"; "(2.5) Domestic violence, as defined in the Victims' Economic Security and Safety Act" (820 ILCS 180/10 (West 2024)); or "(3) A threat of an act described in item (1), (2), or (2.5) causing a realistic apprehension that the originator of the threat will commit the act." 740 ILCS 82/5 (West 2024).

¶ 3    Effective January 1, 2024, the Act was amended to add section 11, providing for employer liability for gender-related violence committed in the workplace. *Id.* § 11. The Act defines "workplace" to mean "the employer's premises, including any building, real property, and parking area under the control of the employer, or any location used by an employee while in the performance of the employee's job duties." *Id.* § 5. "Workplace" also includes "activities occurring off-premises at employer-sponsored events where an employee is not performing the employee's job duties." *Id.*

¶ 4    Section 11 states:

"§ 11. Employer liability for an employee or agent.

(a) An employer is only liable for gender-related violence committed in the workplace by an employee or agent of the employer when the interaction giving rise to the gender-related violence arises out of and in the course of employment with the employer. Liability only extends to gender-related violence that occurs: (i) while the employee was directly performing the employee's job duties and the gender-related violence was the proximate cause of the injury; or (ii) while the agent of the employer was directly involved in the gender-related violence and the performance of the contracted work was the proximate cause of the injury. Proximate cause exists when the actions of the employee or the agent of the employer were a substantial factor in causing the injury.

An employer is liable if the employer has acted in a manner inconsistent with how a reasonable person would act under similar circumstances.

(b) Notwithstanding subsection (a), an employer is only liable for gender-related violence if the employer:

(1) failed to supervise, train, or monitor the employee who engaged in the gender-related violence. An employer providing training pursuant to Section 2-109 of the Illinois Human Rights Act shall have an affirmative defense that adequate training was provided to the employee; or

(2) failed to investigate complaints or reports directly provided to a supervisor, manager, owner, or another person designated by the employer of similar conduct by an employee or agent of the employer and the employer failed to take remedial measures in response to the complaints or reports." *Id.* § 11.

¶ 5    On October 9, 2024, plaintiff filed her complaint alleging that she was 18 years old with a history of bipolar disorder, borderline personality disorder, anxiety disorder, and chronic PTSD. At all relevant times, Timberline owned and operated a residential and outpatient treatment facility located in Lemont, Illinois (facility) for women and adolescent girls with eating disorders, addiction, depression, trauma, and other mental health issues. Acadia owned and controlled Timberline. In February 2024, plaintiff voluntarily checked herself in for an inpatient stay at defendants' facility. A staff member took her to the "Willow Lodge," where she resided during her stay. Patients at the facility were not permitted to move about freely; they were required to be accompanied by a behavioral health associate (BHA) while walking through the facility at all times. Hampton was a BHA whose job-related duties included monitoring patients and escorting them to and from areas of the facility.

¶ 6    Plaintiff alleged that in February 2024, she began noticing Hampton staring at her, following her around the facility, and muttering "explicitly sexual commentary" about her. In March 2024, while performing his job-related duties as a BHA and escorting plaintiff to and from areas in the facility, Hampton brought her to an isolated area in the "Chestnut Lodge" where he knew there were no video surveillance cameras and sexually abused her by forcibly fondling her breasts. Plaintiff pleaded with Hampton to stop and physically fought him until she was able to escape. Plaintiff thereafter contacted one of defendants' employees, Eliana Silva, who was the director of the Willow Lodge, and informed her of Hampton's sexual abuse. Silva advised plaintiff to "keep her distance from Hampton" but otherwise failed to intervene or prevent Hampton from having further contact with her.

¶ 7    Plaintiff alleged that on May 10, 2024, Hampton was again performing his job-related duties as a BHA when he escorted her to an isolated room in the "Acorn Lounge" and "sexually

assaulted" her. Plaintiff did not detail the specific acts of sexual assault. Plaintiff subsequently was hospitalized for suicidal ideation. After her discharge, plaintiff was released into Hampton's custody, and he drove her to his home, where he held her hostage for approximately one week and repeatedly "sexually assaulted" and "raped" her. She escaped and returned to Timberline, where she remained until August 10, 2024.

¶ 8    Plaintiff alleged that from April 8, 2020, through April 20, 2024, eight other patients made reports to the Lemont Police Department that they had been sexually assaulted while at the facility. One patient reported a sexual abuse. Defendants took no remedial measures in response to those reports.

¶ 9    In count VII of her complaint, plaintiff alleged that Hampton's sexual abuse and sexual assault of her in the Chestnut and Acorn Lodges constituted acts of gender-related violence during the performance of his employment-related duties. In violation of section 11, Timberline failed to act in a manner consistent with how a reasonable person would act under similar circumstances when confronted with Hampton's gender-related violence. Specifically, Timberline failed to implement and enforce mandatory policies and procedures designed to prevent the sexual abuse and assault of its patients; failed to warn its female patients of the risk posed by Hampton and of sexual assault by its employees at its facility; failed to properly train its employees, including Hampton, in the prevention of sexual abuse and assault; failed to provide adequate supervision, monitoring, and control over Hampton to prevent him from isolating and physically harming vulnerable female patients, including plaintiff; failed to immediately act on the information it learned from plaintiff after the first sexual attack; failed to properly investigate earlier complaints of sexual assaults and take remedial measures; and allowed Hampton to be left alone with plaintiff even after receiving a report that he had sexually abused her.

¶ 10    In count VIII, plaintiff pleaded that Acadia committed the same violations of section 11 of the Act based on the same factual allegations.

¶ 11    Defendants filed a section 2-615 motion to dismiss counts VII and VIII for failure to state a cause of action against them under the Act for Hampton's alleged gender-related violence. In support, defendants noted that section 11(a) states that an employer is only liable for gender-related violence arising out of an interaction occurring in the "course of employment" while the employee was "directly performing" his job duties (*id.* § 11(a)), which is similar to language used in common law cases discussing vicarious liability. Under the common law theory of vicarious liability, also referred to as *respondeat superior*, an employer can be held liable for the torts of an employee only as long as those torts were committed in the scope or course of his employment. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007). Defendants contended that Hampton's alleged sexual attacks were not committed in the scope or course of his employment and therefore they are not the type of acts for which defendants can be held vicariously liable under section 11(a).

¶ 12    Defendants further argued that even if they somehow could be found vicariously liable to plaintiff for Hampton's alleged sexual attacks for purposes of section 11(a), section 11(b) imposes additional elements that must be pleaded and proved before a finding of liability under the Act. Specifically, plaintiff must plead that defendants failed to supervise, monitor, or train Hampton on the avoidance of gender-related violence or failed to investigate her complaint against him. See 740 ILCS 82/11(b) (West 2024). Defendants argued that plaintiff's complaint lacked any specific facts showing they failed to monitor, supervise, or train Hampton or that those failures proximately caused her injuries.

¶ 13    On March 27, 2025, the circuit court entered an order dismissing counts VII and VIII of plaintiff's complaint with prejudice. The court agreed with defendants that section 11(a) utilized

and incorporated the common law language of vicarious liability, meaning that plaintiff was required to plead and prove that Hampton's underlying gender-related violence (*i.e.*, his alleged sexual abuse and assault of her) was committed in the scope or course of his employment. Citing case law holding that an employee's sexual abuse or assault is outside the scope or course of employment (see, *e.g.*, *Deloney v. Board of Education of Thornton Township*, 281 Ill. App. 3d 775, 784 (1996); *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 677-81 (1998); *Powell v. City of Chicago*, 2021 IL App (1st) 192145, ¶¶ 18-21), the court ruled that plaintiff had failed to plead defendants' vicarious liability under section 11(a). As plaintiff failed to state a cause of action under section 11(a), the court determined that an analysis of whether plaintiff pleaded the additional elements under section 11(b) was "not necessary."

¶ 14    Plaintiff filed a motion for reconsideration, which the court denied in an order entered on May 13, 2025. In that same order, the court made a Rule 304(a) finding that there was no just reason for delaying appeal. Plaintiff timely filed her notice of appeal of the dismissal order on May 30, 2025.

¶ 15    Plaintiff contends that the circuit court erred by dismissing counts VII and VIII of her complaint pursuant to section 2-615 of the Code. A section 2-615 motion challenges the legal sufficiency of the complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). When reviewing the complaint, we accept as true all well pleaded facts and all reasonable inferences that may be drawn from those facts, while considering the allegations in the light most favorable to plaintiff. *Id.* A section 2-615 motion should be granted only when no set of facts can be proved that would entitle plaintiff to recover. *Id.* Our review is *de novo*. *Id.*

¶ 16    Plaintiff argues that the circuit court misread section 11 when dismissing counts VII and VIII of her complaint. Plaintiff contends that, properly read, section 11 creates *direct liability* (not

merely vicarious liability) against employers for their employees' gender-related violence in the workplace. Plaintiff contends she adequately pleaded that Hampton's alleged sexual abuse and assault occurred in the workplace and constituted gender-related violence under section 5 of the Act and that defendants were directly liable therefor under section 11.

¶ 17    Defendants agree that Hampton's alleged acts of sexual abuse and assault qualify as gender-related violence under section 5. However, they contend that the circuit court properly found that section 11(a) incorporated the common law theory of vicarious liability requiring plaintiff to plead that Hampton's alleged acts occurred in the scope or course of his employment. Plaintiff failed to meet this pleading requirement because an employee's sexual abuse or assault is never within the scope of employment.

¶ 18    Resolution of this issue requires us to construe section 11. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Moreland v. Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago*, 2025 IL 131343, ¶ 27. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56. Words and phrases are not considered in isolation but must be viewed in light of other relevant statutory provisions. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. We read the statute as a whole, giving effect to every word, clause and sentence, so as not to render any part of it superfluous or meaningless. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. Where the statute is clear and unambiguous, we will apply it as written without resort to extrinsic interpretive aids. *Moreland*, 2025 IL 131343, ¶ 27. The construction of a statute is a question of law, which we review *de novo*. *Id.*

No. 1-25-1028

¶ 19    Accordingly, we begin our analysis by examining the statutory language, which we set forth earlier in this opinion. Section 11(a) clearly and unambiguously states that an employer is only liable for its employee's gender-related violence in the workplace when the *interaction* giving rise to the violence arises out of the course of employment and when such violence occurred while the employee was directly performing his job duties and was the proximate cause of the injury. 740 ILCS 82/11(a) (West 2024). Section 11(a) does not state that the gender-related violence itself must arise out of the employee's course of employment.

¶ 20    Plaintiff met section 11(a)'s pleading requirements by alleging that in the course of his employment, Hampton interacted with plaintiff when he escorted her to and from areas in the facility on multiple occasions. During two of those interactions, Hampton sexually abused and assaulted plaintiff, thereby proximately causing her to suffer "severe and permanent personal and pecuniary injuries."

¶ 21    Defendants argue for a different interpretation of section 11 based on its title, "Employer liability for an employee or agent." *Id.* § 11. Defendants contend that this title incorporates the language of vicarious liability, thereby expressing the legislative intent that no liability attaches to them unless the gender-related violence occurred in the scope or course of employment. Our supreme court has held that an act is within the scope or course of employment, and thus attributable to the employer for purposes of *respondeat superior*, when it is " ' "of the kind he is employed to perform" ' "; " ' "occurs substantially within the authorized time and space limits" ' "; and " ' "is actuated, at least in part, by a purpose to serve the master." ' " *Bagent*, 224 Ill. 2d at 164 (quoting *Pyne v. Witmer*, 129 Ill. 2d 351, 360 (1989), quoting Restatement (Second) of Agency § 228 (1958)). Case law has consistently held that an employee's sexual abuse and assaults are not within the scope of employment because they are never actuated to serve or further

his employer's legitimate business interests. See, *e.g.*, *Hoover v. University of Chicago Hospitals*, 51 Ill. App. 3d 263, 267 (1977); *Deloney*, 281 Ill. App. 3d at 784; *Stern*, 299 Ill. App. 3d at 677; *Powell*, 2021 IL App (1st) 192145, ¶¶ 18-21. Therefore, defendants contend they may not be held liable for Hampton's alleged sexual abuse and assault of plaintiff here.

¶ 22    Defendants' argument is unavailing because, first, section 11's title says nothing about how employer liability thereunder must be pleaded and proved. Even if, as argued by defendants, section 11's title somehow indicated an intent to incorporate the language of vicarious liability requiring that the gender-related violence be committed within the scope of employment, we note that the heading or title of a statute does not control over the statutory language that indicates otherwise. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 661-62 (2005); *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 505-06 (2000).

¶ 23    Further, defendants' reading of section 11(a) as requiring that the employee's gender-related violence must be committed within the scope or course of employment eliminates *any* employer liability therefor under the Act. Section 5 defines gender-related violence to include a battery committed at least in part on the basis of a person's sex, a coercive, physical intrusion of a sexual nature, an act of domestic violence, or a threat to commit any of those acts. 740 ILCS 82/5 (West 2024). Under defendants' construction, none of the gender-related violent acts defined in section 5 would come within the purview of section 11 of the Act, because none of those violent acts are actuated in any way to serve the employer and therefore they would not fall within the employee's scope of employment. In effect, defendants' construction completely nullifies section 11 by immunizing employers for all of their employees' gender-related violence, rendering the Act functionally meaningless. Statutes should be construed so as to render no language or portion

meaningless. *Board of Education of Chicago v. Illinois Educational Labor Relations Board*, 2013 IL App (1st) 122447, ¶ 29.

¶ 24    Defendants contend that if we reject the circuit court's construction of section 11(a) as requiring plaintiff to plead that the gender-related violence occurred in the scope or course of Hampton's employment, we are essentially imposing "strict liability against employers for any sexual assault or other gender violence committed by employees while at work." According to defendants, this would result in a "seismic shift" in Illinois jurisprudence, amounting to a derogation of the common law. A statute in derogation of the common law must be strictly construed and cannot be interpreted to change the common law beyond what is expressed by the statutory language. *Sparling v. Fon du Lac Township*, 319 Ill. App. 3d 560, 563 (2001).

¶ 25    Contrary to defendants' argument, our rejection of the circuit court's construction of section 11(a) does not derogate the common law by leading to strict liability against employers for *any* gender violence committed by employees while at work. As discussed, section 11(a) provides that for liability to attach to an employer for its employee's gender-related violence in the workplace, such violence must have resulted from an interaction arising out of and in the course of the employee's employment and must have occurred during the employee's direct performance of his job duties. Also, as more fully discussed later in this opinion, section 11(a) requires that the employer must have "acted in a manner inconsistent with how a reasonable person would act under similar circumstances" (740 ILCS 82/11(a) (West 2024)) and section 11(b) requires that the employer must have failed to supervise, train, monitor, or investigate its employee who engaged in the gender-related violence (*id.* § 11(b)). Employers are not liable under the Act for gender-related violence falling outside those parameters. For all these reasons, employers are not held to strict liability under section 11.

¶ 26 Defendants also argue that sexual abuse and assault cannot be considered conduct of the kind encompassed in any employee's job duties and therefore that Hampton was not directly performing his job duties at the moments the alleged sexual abuse and assault occurred. Defendants are essentially rearguing that they cannot be held vicariously liable for Hampton's alleged gender-related violence, as it necessarily occurred outside the scope or course of his employment. We have already addressed and rejected this argument. As discussed, plaintiff pleaded that Hampton's job duty was to escort patients within the facility. Hampton was so escorting plaintiff when he allegedly committed gender-related violence by sexually abusing and assaulting her. Plaintiff has adequately pleaded that Hampton perpetrated the gender-related violence while directly performing his job duties.

¶ 27 Our analysis is not yet finished, though, because plaintiff also must plead and prove the additional requirement contained in the last sentence of section 11(a) that the employer acted "in a manner inconsistent with how a *reasonable person* would act under similar circumstances." (Emphasis added.) *Id.* § 11(a). Section 11(a) does not itself explain or expand on the "reasonable person" test formulated in its last sentence; however, section 11(b) provides context by stating that an employer is "only" liable for gender-related violence when it failed to supervise, train, or monitor the employee who committed such violence or failed to investigate complaints or reports of the employee's similar conduct and take remedial measures. *Id.* § 11(b). When read together so as to give effect to every word, clause, and sentence, section 11(a) and (b) require plaintiff to plead that defendants acted unreasonably by failing to supervise, train, monitor, or investigate Hampton.

¶ 28 Plaintiff here pleaded in her complaint that multiple patients had made prior police reports of sexual assaults at the facility, but that defendants failed to properly train its employees, including Hampton, in the avoidance of sexual assault or other gender-related violence and failed to

supervise and monitor him so as to prevent him from isolating and sexually abusing and assaulting her. Plaintiff further alleged that she informed Eliana Silva, the director of defendants' Willow Lodge, after Hampton sexually abused her for the first time in the Chestnut Lodge, but that Silva simply told her to "keep her distance" from him and otherwise took no remedial or preventive action. Hampton subsequently sexually assaulted her in the Acorn Lodge. Plaintiff's pleadings were adequate to allege that defendants failed to reasonably supervise, monitor, or train Hampton on the avoidance of gender-related violence and failed to reasonably investigate plaintiff's complaint against him and take any remedial actions to prevent the further workplace assault.

¶ 29    Defendants contend, though, that plaintiff never specifically identified the "procedures" and "training materials" that should have been used to train and supervise Hampton. Defendants are essentially faulting plaintiff for failing to set forth the evidence in support of her cause of action. However, the pleader is not required to set forth her evidence in the complaint in order to survive a dismissal motion under section 2-615. *Blevins v. Marcheschi*, 2018 IL App (2d) 170340, ¶ 29. She needs only to allege the ultimate facts to be proved. *Id.* Plaintiff here set forth the ultimate facts to be proved, that defendants reasonably failed to train, monitor, or supervise Hampton so as to prevent him from isolating and sexually abusing and assaulting her and then essentially ignored her complaint of his abuse and took no remedial actions, thereby allowing him the opportunity to assault her again. Plaintiff's pleading was sufficient to satisfy the prerequisites for employer liability under sections 11(a) and 11(b).

¶ 30    Defendants argue that *Dennis v. Pace Suburban Bus Service*, 2014 IL App (1st) 132397, compels a different result. In *Dennis*, the plaintiff brought an action to recover damages for injuries she sustained when defendant Jeffrey Moore, a bus driver employed by Pace Suburban Bus Service (Pace) allegedly sexually assaulted her. *Id.* ¶ 1. Plaintiff alleged she was intoxicated while riding

on Moore's bus, falling in and out of consciousness and unable to exit the bus at her regular stop. *Id.* ¶ 2. Moore took plaintiff home after his shift ended, where he sexually assaulted her while she was still intoxicated and unable to give consent. *Id.* Plaintiff asserted a claim of negligent supervision against Pace under the doctrine of *respondeat superior*, alleging that Moore was acting in the scope of his employment when he removed her from the bus with the intention to sexually assault her and that Pace was negligent in hiring, retaining, and supervising Moore. *Id.* ¶ 3. We affirmed the dismissal of plaintiff's negligent supervision count for failure to state a cause of action under section 2-615 because plaintiff alleged no facts that Pace had any reason to know that Moore would entice a passenger off his bus and sexually assault her. *Id.* ¶ 25.

¶ 31    Unlike *Dennis*, plaintiff here alleged that the high number of police reports of sexual assault occurring at the facility put defendants on notice of the need for remedial measures, which were never taken. Plaintiff also specifically alleged that she informed the Willow Lodge director how Hampton had sexually abused her in the Chestnut Lodge, thereby putting defendants on notice that Hampton posed a continuing threat to her. The director took no remedial action and provided no additional training or supervision of Hampton, thereby enabling him to subsequently isolate and assault her in the Acorn Lodge. Plaintiff's allegations were sufficient to plead a cause of action under section 11 of the Act for defendants' failure to reasonably supervise, train, or monitor Hampton or to investigate plaintiff's complaint against him.

¶ 32    For all the foregoing reasons, we reverse the order dismissing counts VII and VIII of plaintiff's complaint and remand for further proceedings. As a result of our disposition of this case, we need not address the extrinsic aids for statutory construction cited to us by the parties.

¶ 33    Reversed and remanded.

*Doe J.P. v. TK Behavioral, LLC*, 2026 IL App (1st) 251028

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2024-L-011300; the Hon. Michael F. Otto, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher J. Warmbold and Lauren E. Edmunds, of Meyers & Flowers, LLC, of St. Charles, for appellant. |
| **Attorneys for Appellee:** | Sandra E. Kupelian and Kathleen M. Klein, of Clausen Miller P.C., of Chicago, for appellees. |